AO 106 (Rev. 04/10) Application for a Search Warrant

SEALED

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 25 2013

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

COPY OF SONY COMPUTER HARD DRIVE BEARING: 16227055700076, LABELED DEA EXHIBIT N-6

Case No. 13mr840

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of ____ New Mexico ____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 953(e)(1) | Exportation of Controlled Substances |
| 21 USC 843(a)(2)(3) | Prohibited Acts |
| 21 USC 844 | Penalties for Simple Possession |

The application is based on these facts:
See Attached Affidavit of DEA S/A Jeffrey A Mauldin

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Jeffrey A Mauldin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: OCT 25 2013

*Judge's signature*

City and state: Albuquerque, N.M.

United States Magistrate Judge
*Printed name and title*

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of Title 21 USC Section 953 (e)(1) and (2), Title 21 USC 843(a)(3), and Title 21 USC Section 844 (a) involving Teresa S. WILEY, WILEY COMPOUNDING SYSTEMS, WILEY Inc., WILEY CHEMIST, and other co-conspirators to include but not limited to corporate entities owned by or associated with Teresa WILEY, including:

   a. lists of customers and related identifying information, including but not limited to telephone numbers, addresses, names, or contacts;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, account information, account records, addresses, phone numbers, or any other identifying information);

   d. any information recording schedule or travel including but not limited to any personal calendars or day planners;

   e. all bank records, checks, credit card bills, accounting information related to any business owned by or associated with Teresa WILEY, supplier account information, and other financial records including but not limited to monetary transactions and tax records;

   f. any and all information regarding the description, acquisition, or location of properties;



g. any and all e-mail information related to the above listed crimes, including but not limited to sent, received, deleted, and draft messages;

h. shipping information included but not limited to customer names, addresses, and products shipped.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet, including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A COPY THE SONY COMPUTER HARD DRIVE BEARING NUMBER 16227055700076, DEA EXHIBIT N-6, CURRENTLY LOCATED AT THE DEA ALBUQUERQUE DISTRICT OFFICE | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jeffrey A Mauldin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since August of 2004. Prior to employment with the DEA, I was employed by the Midwest City Police Department, Midwest City, Oklahoma from September 1997 to August 2004. During this time I accumulated the following training and experience:

   a. I attended the DEA training academy where I received approximately 500 hours of specialized narcotics related training. The training included, but was not limited to controlled substances identification, narcotics related investigative techniques, interview and interrogation, preparation of search warrants, surveillance, and electronic monitoring, money laundering methods and forensic



techniques.

b. Since graduating from the DEA academy, I have directed and assisted numerous investigations targeting individuals and organizations trafficking cocaine, cocaine base (crack), marijuana, methamphetamine, heroin, and other controlled substances as defined in Title 21 United States Code, Section 801. Accordingly I have authored and executed numerous search warrants, Title III Affidavits, testified in hearings and trials, and conducted numerous other techniques while investigating controlled substances violations.

c. While employed by the Midwest City Police Department, I graduated from the Oklahoma Council of Law Enforcement Education and Training, Basic Police Academy and obtained intermediate and advanced police officer ratings. I subsequently became certified by the National Highway Transportation and Safety Board and International Association of Chiefs of Police as a Drug Recognition Expert, and completed over 100 hours of specialized controlled substances training from the Association of Oklahoma Narcotics Enforcers.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a copy of a Sony computer hard drive seized from 6911 Taylor Ranch Road C-11/Suite A, Albuquerque, New Mexico, pursuant to a federal search warrant authorized by United States Magistrate Judge Robert H. Scott (Warrant Number: 13MR763). On October 4, 2013, Intelligence Research Specialist (IRS) Brian McCarron made a



copy of the hard drive located inside the Sony computer bearing number 16227055700076, which became DEA exhibit N-6, which was seized from under a wooden desk located in the front office portion of 6911 Taylor Ranch Road C-11/Suite A, Albuquerque, NM. According to IRS McCarron this is an exact copy of the contents of the drive, the data contained on the copy of the drive was not examined by IRS McCarron; it was only checked it to ensure that the data was in fact copied. The device is currently located at the DEA Albuquerque District Office.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

6. I am a co-case agent assigned to investigate the compounding, filling, and exportation of controlled substance prescriptions by WILEY CHEMISTS, INC (hereinafter referred to as WILEY CHEMISTS). Pursuant to that investigation, an Administrative Inspection Warrant, under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 801), was issued by United States Magistrate Judge Robert H. Scott, to Diversion Investigator (DI) Lorena Rodriguez of the Drug Enforcement Administration on September 27, 2013, to inspect the controlled premises of WILEY CHEMISTS, located at 1676 Hospital Drive, in Santa Fe, New Mexico 87505.

7. Your Affiant participated in the execution of the Administrative Inspection Warrant on September 30, 2013. On that date, your Affiant was informed by DI Rodriguez that she had received information from Elva GURULE, Pharmacy Technician (CPhT) and Pharmacy Manager of WILEY CHEMISTS, regarding the mailing practices of WILEY CHEMISTS.

8. According to DI Rodriguez, CPhT GURULE advised her that WILEY CHEMISTS compounded controlled substance prescriptions containing testosterone, a Schedule



III controlled substance, and then mailed those compounded prescriptions to WILEY SYSTEMS, located at 6911 Taylor Ranch Road, in Albuquerque, New Mexico. CPhT GURULE described WILEY SYSTEMS as a "packaging business" in Albuquerque that distributes the packaging materials for patented "WILEY PROTOCOL" compounded medications. CPhT GURULE explained that WILEY CHEMISTS would mail the patient-specific compounded prescriptions to WILEY SYSTEMS, for WILEY SYSTEMS to mail the product to patients. DI Rodriguez asked CPhT GURULE why the pharmacy would send the prescription to another location to have the prescription mailed from the secondary location. CPhT GURULE explained it was because WILEY CHEMISTS did not have the financial resources to mail the packages from the pharmacy. After further inquiry and review of prescription records with CPhT GURULE, she confirmed to DI Rodriguez that the packages mailed from WILEY CHEMISTS to WILEY SYSTEMS were large orders mailed to patients outside of the United States, in particular, to Thailand.

9. Based upon this information, I obtained a federal search warrant for the premises of 6911 Taylor Ranch Road C-11/Suite A, Albuquerque, MN. Pursuant to that warrant, I seized the Sony computer bearing number: 16227055700076 from under a wooden desk located in the front office area.

10. On October 3, 2013, DI Rodriguez and I interviewed Julie and Kurt Feierabend who work for WILEY COMPOUNDING SYSTEMS. The Feierabend's said that they would receive packages from WILEY CHEMIST along with instructions regarding whom to mail the packages to. Kurt Feierabend said that he did not open the packages rather he simply relabeled it and sent it along to the intended recipient. Kurt Feierabend said that he would utilize the Sony computer located near the wooden desk to arrange the mailing process with the United States Postal Service, to ship the packages to Thailand.



11. I was told by DI Rodriguez that on September 30, 2013, she conducted a computer query of WILEY SYSTEMS in the Drug Enforcement Administration RICS database, and did not locate a DEA Registration for WILEY SYSTEMS or WILEY COMPOUNDING SYSTEMS authorizing them to administer, dispense, procure, or prescribe controlled substances from 6911 Taylor Ranch, Suite C-11, in Albuquerque, New Mexico. Pursuant to the Controlled Substance Act, every person who manufactures or distributes any controlled substance shall obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him. *See* 21 U.S.C. 822(a)(1) (the federal statutes identifying the persons required to register). Pursuant to Title 21 of the Code of Federal Regulations, every person who manufactures, distributes, dispenses, imports, or exports any controlled substance shall obtain a registration. *See* 21 C.F.R. § 1301.11(a) (the federal regulations setting forth the DEA regulation for persons required to register).

12. Furthermore, pursuant to the Controlled Substances Act, it shall be unlawful to export from the United States to any other country any non-narcotic controlled substance in Schedule III unless, there is furnished (before export) to the Attorney General documentary proof that importation is not contrary to the laws or regulations of the country destination for consumption for medical, scientific, or other legitimate purposes; and it is exported pursuant to such notification or declaration, or in the case of any nonnarcotic controlled substance in Schedule III, such export permit, notification, or declaration as the Attorney General may by regulation prescribe. *See* 21 U.S.C. 953(e)(1), (2) (the federal statutes identifying the exportation of controlled substances). Pursuant to Title 21 of the Code of Federal Regulations, no person shall in any manner export or cause to be exported from the United States any non-narcotic controlled substance listed in Schedule III, IV, or V, unless and until such person is properly registered under the Act. *See* 21 C.F.R. § 1312.21(b) (the federal regulations setting forth the

5



DEA regulation for the requirement of authorization to export).

13. WILEY CHEMISTS mailed controlled substance prescriptions to WILEY SYSTEMS/WILEY COMPOUNDING SYSTEMS, for the purpose of exporting those controlled substance prescriptions from the United States, without an Exporter DEA Registration in violation of 21 U.S.C 953(e) (1) and (2) 843(a)(3) and 844(a).

14. I believe there is probable cause to search the copy of the Sony hard drive seized from 6911 Taylor Ranch, C-11/Suite A, in Albuquerque, New Mexico, for further evidence of WILEY SYSTEMS/WILEY COMPOUNDING SYSTEMS, WILEY CHEMIST, WILEY Inc., being in illegal possession of controlled substances at an un-registered address, with the intent of exporting those controlled substances without an Exporter DEA Registration in violation of federal law.

15. Furthermore, I know that individuals in this case, have utilized the Internet and various unknown search engines and other entities to process financial transactions, communicate with customers regarding the ordering and shipping of controlled substances, and to communicate with other individuals associated with WILEY Inc., WILEY COMPOUNDING SYSTEMS/WILEY SYSTEMS, and WILEY CHEMIST.

16. The Device is currently in storage at the DEA Albuquerque District Office. I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.



## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Computer: The term "computer" described herein, is defined pursuant to Title 18, united States Code, Section 1030(e)(1), as "an electronic, magnetic, optical, or electromechanical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility and communications facility directly related to or operating in conjunction with such devices."

    b. Digital Camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. USB Flash/Thumb Drive: Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store program files, software, passwords, pictures, movies, and any other type of digital data. Depending on the model, a flash/thumb drive may have the ability to



store very large amounts of electronic data, equivalent to thousands of pages of paper, and be very small in size.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training and experience, I know that the computers have the capability to serve as digital cameras and data storage devices. These devices can utilize removable storage devices, such as the one described in Attachment A, and access the internet utilizing IP Addresses. Flash/thumb drives can be utilized by the computers to store large quantities of data such as spreadsheets, scanned documents, templates, incriminating photographs, and other relevant material. Furthermore, I know that examining data stored on



devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, other as yet unknown co-conspirators, types, quantities, distribution methods, and bank accounts and other financial instruments utilized to launder proceeds from the distribution of controlled substances.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being

9



used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives and external flash/thumb drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a

10



file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

11



application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

24. This affidavit has been approved by AUSA Steve Kotz.



## **CONCLUSION**

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Jeffrey A. Mauldin
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on: October 25, 2013.

UNITED STATES MAGISTRATE JUDGE

13

